## MITCHELL *vs.* OAKLEY.

Where the complainant has a perfect defence at law, to a suit commenced
against him there, if the allegations in his bill are true, the court of chance-
ry, although it has concurrent jurisdiction with the court of law in relation
to the subject of the suit, will not grant a preliminary injunction for the
mere purpose of obtaining exclusive jurisdiction of the case,

In cases of concurrent jurisdiction, a complainant may come into chancery
for relief upon the *final* hearing of his cause, if he thinks proper to do so;
subject to the power of this court to refuse him his costs where he files his
bill here unnecessarily, instead of making his defence in the suit com-
menced against him in the court of law. But to entitle the complainant
to a preliminary injunction in such a case, to stay the proceedings in a court
of law, he must show by his bill that some injustice would be done him, or
that he would be deprived of some legal or equitable right if his adversary
was permitted to proceed in the suit at law.

Whether the purchase of a negotiable note at a greater discount than legal
interest, from a person who was supposed to be the legal holder and owner
thereof, but who was in fact the mere agent of the drawer, rendered the
note void for usury in the hands of the purchaser, or whether such purchas
er was protected to the extent of the money actually paid for the note un-
der the provisions of the former revised statutes relative to usury; *quære?*

January 22.

THIS was an appeal from a decision of the vice chancel-
lor of the first circuit, dissolving an injunction upon the facts
appearing upon the complainant's bill. The bill was filed
in May, 1837. It stated that the complainant made a note
payable to the order of J. H. Underhill, and entrusted it to
the latter for the purpose of having it discounted at a bank,
for the complainant's benefit. But instead of doing this, Un-
derhill sold it to the defendant, as his own, at a discount of
two per cent a month for the time the note had to run.

*W. Silliman*, for the complainant.

*C. O'Conner*, for the defendant.

THE CHANCELLOR. There is no doubt, from the state-
ment in the complainant's bill, that Underhill has practiced
a most atrocious fraud upon one or both of the parties to
this suit. And if he obtained the money from Oakley on

the note, under the pretence that the note was his own, and under circumstances which would render the note void for usury in the hands of the latter if that pretence was not true, he ought unquestionably to be sent to the state prison for swindling. (2 *R. S.* 677, § 53. *The People* v. *Haynes,* 14 *Wend.* 546.) Independent of the question of usury, however, the complainant has no defence whatever to the note, either in law or in equity; as it is not alleged in the bill that at the time the defendant purchased the note, he knew or had any reason to suspect that Underhill was not the bona fide owner and holder thereof. And in relation to negotiable paper, the principle is well settled that where one of two innocent persons must suffer by the fraudulent acts of a third, he who by his carelessness has enabled such third person to commit the fraud must bear the loss.

Neither is it perfectly clear, even if the facts shall turn out to be as stated in the complainant's bill, that the purchase of the note was usurious, and that the defendant is not entitled to the protection under the provision of the revised statutes which were in force at the time of his purchase, as a bona fide receiver and holder of this negotiable note, to the extent of the purchase money actually paid for the same, with interest on that amount. (1. *R. S.* 772, § 5.) If the purchase of a negotiable note from the payee before it was due, at a discount, should however be adjudged to be usurious, under the statute then in force, where it afterwards was discovered that it was not a valid note in the hands of the vendor, still the decision of the vice chancellor was right in dissolving the injunction. For this bill having been filed before the act of the 15th of May, 1837, to prevent usury, went into operation, the decision of this court in the case of *Livingston* v. *Harris,* (3 *Paige's Rep.* 528,) is directly in point to show that the complainant is not entitled to the extraordinary aid of a preliminary injunction, to transfer the jurisdiction of the case from a court of law to this court, without an offer to pay what is equitably due. It is true, the revised statutes did not require an offer to pay what was equitably due as a necessary condition to the granting relief in this court, in a proper case for coming here. But even in cases of concurrent jurisdiction, where

the complainant has a perfect defence in a court of law if he chooses to avail himself of it, this court will not grant a preliminary injunction, in the first instance, for the mere purpose of obtaining the exclusive jurisdiction of the case, and thus depriving the adverse party of his common law right of trial by jury.   In cases of concurrent jurisdiction, a party may come into this court for relief upon the final hearing, if he thinks proper to do so ; subject to the power of this court to refuse him his costs when he takes the case from the jurisdiction of a court of law unnecessarily. (*Gridley* v. *Garrison*, 4 *Paige's Rep.* 647.)   But when he asks the interposition of the extraordinary power of this court, by means of a preliminary injunction, to deprive his adversary of the right of a common law trial as to the matters of fact in dispute between them, he must show by his bill that some injustice would be done him, or that he would be deprived of some legal or equitable right, if his adversary should be permitted to proceed at law.

The order appealed from must therefore be affirmed, with costs.